CHEMICAL ELECTRIC LIGHT AND POWER COMPANY *vs.*
JAMES H. HOWARD.

Suffolk.    November 15, 1888. — January 4, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*English Patent — Agreement to assign — Promissory Note — Consideration
— Evidence — " Expense " — Estoppel.*

In an action by the payee upon a promissory note, given in consideration of a
written agreement to assign an English patent stated therein to be " in full
force and effect, otherwise " the maker was " to be relieved from the payment
of said note," evidence was offered tending to prove that the patent was invalid
by reason of a prior publication of the only use it purported to cover.  *Held,*
that while the evidence apart from the agreement would not have warranted a
verdict that the note was without consideration, yet it should have been sub-
mitted to the jury on the question whether such patent was in " full force and
effect."

The agreement further stipulated that any expense necessary to accomplish the
issue of the letters patent was to be paid by the assignee.  *Held,* that the rea-
sonably necessary expenses of transacting the business, beyond payments to
the inventor, to the patent solicitors, and for consul fees, should be included.

CONTRACT upon the following promissory note, signed by the
defendant :

" $1,000.00.    Boston, Mass., April 23, 1886.    July 1, 1886,
or fifteen days after I have permission to give publicity to the
fact that the Chemical Electric Light and Power Company own
foreign patents of Thomas John Handford, covering the use of
bichromate of soda in galvanic batteries, I promise to pay to
the Chemical Electric Light and Power Company the sum of
one thousand dollars, value received, as per agreement executed
this day."

The answer set up failure of consideration, and fraud.    Trial
in the Superior Court, before *Sherman,* J., who allowed a bill of
exceptions, in substance as follows.

The plaintiff offered in evidence the note and the agreement
therein referred to, which was signed by the parties and was
not under seal, and was called the " Howard Agreement."    The
agreement was as follows :

" This agreement, made this twenty-third day of April, 1886,
between the Chemical Electric Light and Power Company, a

corporation organized under the laws of Maine, and doing business in Boston, Massachusetts, and James H. Howard, of Medford, Massachusetts.

"Witnesseth: Whereas the said company, through its president, Stephen M. Weld, and Mr. Alfred Rodman, bought and acquired certain patent rights respecting the use of bichromate of soda from the inventor, Benoit Jarriant, of Paris, for the United States, and also for 'everywhere,' meaning all countries outside of the United States where Benoit Jarriant or Thomas John Handford of England, his patent agent, have any rights which are or may be secured to him or them by reason of the issue to said Handford of a certain English patent, numbered 1,956 of A. D. 1882, 25th of April, and sealed on the seventeenth day of October, 1882; and whereas, said Howard desires to acquire and own all of said patent rights so purchased and acquired by said company for all the countries outside of the United States;

"Now, therefore, it is agreed as follows: For and in consideration of one hundred shares of stock of the Chemical Electric Light and Power Company transferred by said Howard unto said Alfred Rodman and delivered to Stephen M. Weld, the receipt whereof is hereby acknowledged, and the sum of one thousand dollars ($1,000) cash, to be paid unto said Stephen M. Weld for said company by said Howard, the Chemical Electric Light and Power Company hereby agree to sell, assign, transfer, and deliver unto said Howard each and every patent right covering all countries outside of the United States ·purchased for it by said Rodman in France, recently, and to deliver the necessary petition, power of attorney, and other papers executed by said Thomas John Handford, or Benoit Jarriant, necessary to secure to said Howard the issue of such letters patent as he may desire to have issued, and to deliver to him all letters patent that have already been issued to said Handford in countries outside of the United States, provided said company incur no expense.  Any expense necessary to accomplish above to be paid for by said Howard.

"In consideration of the above, the said Howard agrees to pay the sum of one thousand dollars ($1,000) unto said company, on or before the first day of July, 1886, or sooner, if the patent to

be applied for in the United States covering said Handford's invention should be issued before that date, and further agrees to transfer, assign, and deliver to said company two (2) certain patents already applied for by him, covering improvements in galvanic batteries, so far as said inventions relate to the United States, so soon as said letters patent are granted and issued by the United States Patent Office. It is further agreed that said company shall bear the expense of obtaining the Handford patent in the United States, and that said Howard is to bear the expense of obtaining the two (2) patents already applied for by him; and further, that if it is found that the English patent No. 1,956, hereinbefore referred to, does secure unto said Handford or Jarriant and his assigns the exclusive use of bichromate of soda in all galvanic cells wherein soda can be used, then said Howard is to pay unto said company a further consideration of ten per cent of the net profits received by him from the sale of said English patent right, and also ten per cent of the net profit received from the sale of rights under said Handford or Jarriant in all countries where it gives Handford or Jarriant or his assigns, the exclusive use of bichromate of soda in galvanic batteries.

"It is further agreed, that should the entire cost of obtaining said English patent of Handford prove to be less than $1,000 (aside from the one hundred shares of stock paid to Alfred Rodman), then and in that event the said company shall return all excess over and above the actual amount of expense incurred by said Rodman in obtaining for said company said English Handford patent, and the other foreign rights purchased from him, or from said Benoit Jarriant.

"It is understood that said English patent No. 1,956 is in full force and effect, otherwise said Howard is to be relieved from the payment of said one thousand dollars in cash under this agreement.

"It is likewise understood that said Howard is to make no claim upon said company for compensation for his management of its business and finances up to May 1, 1886, and for such further time as he may continue to manage its business and finances without a written agreement as to compensation."

The defendant admitted that the plaintiff had taken out the

United States patent, and paid the expense thereof, as required in said agreement.

The plaintiff also introduced in evidence the following instrument under seal, and signed by the defendant, and called the " Howard Release":

" Whereas, a certain agreement, a copy whereof is hereto annexed, was entered into on the twenty-third day of April, 1886, between the Chemical Electric Light and Power Company and James H. Howard, by which said company agreed, among other things, to sell, assign, transfer, and deliver to said Howard certain patent rights, purchased for it in France by Alfred Rodman, and also to deliver to said Howard certain papers and letters patent; and whereas, it is desired to have said patent rights purchased by said Rodman assigned directly to said Howard by said Alfred Rodman, or by Stephen M. Weld of Boston, in case said assignment from said Jarriant to said Weld is this day in existence, excepting an assignment covering said rights for the United States, instead of by said Chemical Electric Light and Power Company, and to relieve said company of any further obligation to deliver to said Howard the aforesaid papers, documents, and letters patent and rights. Now, therefore, in consideration of the sum of one dollar and other valuable considerations to me, said Howard, in hand paid, the receipt of which is hereby acknowledged, I, the said Howard, hereby accept the assignment of said Rodman, dated the third day of August, 1886, and the assignment of said Weld, dated August 5th, 1886, covering the aforesaid patent rights purchased by said Rodman in France. Due execution and delivery of said assignments is hereby acknowledged, in full substitution for the assignment covering such rights to be made by said company in accordance with the agreement aforesaid, and I relieve said company of all further liability to deliver to me the papers, letters, and patent rights under said agreement, provided said assignment by said Rodman and Weld conveys to me all rights acquired by said Rodman from Jarriant, excepting for the United States.

" In witness whereof, I hereunto set my hand and seal at Boston, county of Suffolk and Commonwealth of Massachusetts, this fifth day of August, A. D. 1886."

The plaintiff also introduced in evidence the assignments from

Jarriant to Rodman, and from the latter to the defendant; and it was admitted that no other assignment from Jarriant had been made to Rodman or Weld than the one therein referred to, and that the defendant had assigned to the plaintiff the two patents called for by the " Howard Agreement."

The parties agreed that, instead of calling experts, the law of England, so far as material, might be proved by reading from the statutes and the reported decisions of English courts, which was done. The judge also admitted the report of a Canadian case as within this agreement, and the defendant excepted.

The defendant offered evidence tending to show:

" 1st. That he was induced to execute the Howard Agreement by conduct and statements of the plaintiff's officers, which, as he claimed, amounted in law to false and fraudulent representations.

" 2d. That there was an absolute failure of consideration both for the agreement and note.

" 3d. That the Howard Release was obtained of the defendant under the following circumstances: Rodman had taken the assignment from Jarriant in his own name, and had subsequently assigned his interest therein to Weld, and it was supposed that Jarriant had also assigned to Weld; that to simplify matters, and to avoid a succession of transfers to the company and from the company to Howard, it was decided to have the assignments made directly from Rodman and Weld to Howard, Weld saying that he would only do it on condition that that made a clear end of the whole thing; that, at the time of the execution of the release, the assignments were in possession of Weld, the president of the company; that Howard was led to expect, and did expect, to receive the assignments upon signing the release, but that instead, after signing, he was informed by Weld that the directors had instructed him that, instead of giving the assignments to Howard, he should put them in trust; that he, Weld, did not feel authorized in giving up the papers until the amount of Howard's note had been paid, and that the only way he could deliver them would be that they should go to Kidder, Peabody, and Company's, and put the papers in trust with instructions; that Howard then wrote a letter to Kidder, Peabody, and Company, enclosing the assignments, authorizing

them to send them to London, to be there delivered to one Burroughs, only upon payment of a certain draft, out of the proceeds of which, if paid, Weld was to receive one thousand dollars. If the draft should be dishonored, the assignments were to be returned to Boston, and to Weld, and this letter and enclosed assignments were by mutual agreement delivered by Howard to Kidder, Peabody, and Company; that thereafter the draft on Burroughs was dishonored (on the ground of the alleged invalidity of the Handford patent), and the assignments, being returned from London to Kidder, Peabody, and Company, were by them delivered to and receipted for by Weld, and have ever since remained in the possession of the plaintiff company.

"4th. That the English Handford patent, No. 1,956 of 1882, was invalid by reason of a prior publication of that portion thereof relating to the use of bichromate of soda in galvanic batteries, in an English patent of one Highton, No. 1,643 of 1871, claiming that by reason thereof said Handford patent was not at the time of the signing the Howard Agreement in full force and effect."

The defendant then asked the court to make certain rulings in the construction of the Howard Agreement, the Howard Release, the Handford and Highton patents, and as to the English law relating to the novelty and validity of a patent; and further, to instruct the jury that, if they should find the Handford patent to have been originally invalid, they should find for the defendant, as the grant of an interest in or right under a void patent is not a valid consideration for a promise by the grantee.

"It was agreed (subject to the plaintiff's objection as to its competency) that Rodman paid out in the course of his trip to England and France the following sums, viz." Here followed a list of payments by Rodman to "Jarriant for patents, $392.00," to patent solicitors, and for consul fees, as well as for his travelling and hotel expenses, for cablegram, etc., including a payment to Rodman by the company for his services, amounting to $1079.99, in addition to the one hundred shares of stock which had been furnished by Howard, as called for in his agreement. The defendant contended that by the terms of the Howard Agreement he was liable, if at all, only for payments to Jarriant, to patent solicitors in London and Paris, and for consul fees.

The plaintiff objected to the admission of any evidence to show want of consideration for the note; or that the Handford patent was invalid; or that the instruments referred to in the Howard Release, as having been delivered to Howard, had not been delivered; or that the plaintiff company was not the owner of the "Jarriant rights"; contending that the defendant was estopped from setting up any of these defences, by reason of the release and other documents in evidence, or to show fraud, or that the cost of obtaining the Jarriant rights was less than $1,000.

The judge, however, admitted the evidence, *de bene*, subject to the plaintiff's exception, with a view to submitting certain questions, to be thereafter framed, to the jury, for them to return a special verdict thereon, the understanding of the judge being that both counsel agreed to this course; but after the evidence — including the testimony of the defendant's expert, and of an expert called, *de bene*, by the plaintiff in reply, as to the identity of the inventions described in the two English patents — was all in, the counsel for the defendant stated to the judge that such was not his understanding, and that he wished to go to the jury, generally leaving them to bring in a general verdict. This the judge declined to permit, and without any specific rulings of law, at the request of the plaintiff, ordered a verdict for the plaintiff in the sum of one thousand dollars, with interest from the date of the writ. The defendant alleged exceptions.

*G. A. O. Ernst*, for the defendant.

*W. S. Rogers*, for the plaintiff.

KNOWLTON, J. The promissory note upon which this suit is brought was only a part of a contract, of which the rest appears in the writing called the Howard Agreement, executed on the same day. The defendant, at the trial, introduced evidence tending to show that the English Handford patent, referred to in the contract, was invalid by reason of a prior publication "of that portion thereof relating to the use of bichromate of soda in galvanic batteries in an English patent of one Highton," in 1871. So far as appears by the reference to the patent in the several contracts before us, this use is all that it professed to cover, and if there was such prior publication it is void. Even

if it purported to include an additional invention which is new and useful, under the English law, which differs in this particular from the American, a prior publication of this part would render the whole invalid. *Morgan* v. *Seaward*, 2 M. & W. 544. *Brunton* v. *Hawkes*, 4 B. & Ald. 541. We must assume, therefore, that the jury might have found the patent to be void because the invention was not new.

The only consideration for the defendant's promise to pay the one thousand dollars was the plaintiff's agreement to assign this patent; and it has often been held in this Commonwealth, that a promissory note, given for an assignment of an invalid patent, is without consideration. *Dickinson* v. *Hall*, 14 Pick. 217. *Lester* v. *Palmer*, 4 Allen, 145. *Nash* v. *Lull*, 102 Mass. 60. *Harlow* v. *Putnam*, 124 Mass. 553. If this had been an American instead of an English patent, there would be no doubt that the evidence offered, if convincing, would have shown the note to be worthless for want of consideration. But the English courts have given to assignments of patents, and to contracts purporting to grant licenses and convey rights under patents, an interpretation different from that which is given to them here. Perhaps from a disinclination to go so far as the American courts in holding that a vendor impliedly warrants his title to a chattel sold while in his possession, and perhaps in part on account of the practice there in relation to issuing patents, the courts in England hold that one who purchases a patent, or rights under a patent, in the absence of fraud and of express stipulation, must be presumed to look to the existence of the patent as a document which *prima facie* gives a right, rather than to the facts behind the patent upon which its validity depends. *Hall* v. *Conder*, 2 C. B. (N. S.) 22, 53. *Smith* v. *Neale*, 2 C. B. (N. S.) 67. *Noton* v. *Brooks*, 7 H. & N. 499. *Trotman* v. *Wood*, 16 C. B. (N. S.) 479. *Lawes* v. *Purser*, 6 El. & Bl. 930. *Adie* v. *Clark*, 3 Ch. D. 134.

Of such a contract Lord Campbell said, in *Hall* v. *Conder*, " The thing contracted for here was a real patent under the Great Seal, although, by reason of circumstances not within the knowledge of either party at the time of the contract, it might ultimately prove valueless." See also cases in which it is held that one contracting in reference to a patent is estopped to deny

its validity. *Bowman* v. *Taylor*, 2 A. & E. 278. *Hills* v. *Laming*, 9 Exch. 256. *Cutler* v. *Bower*, 11 A. & E. (N. S.) 973. *Wiles* v. *Woodward*, 5 Exch. 557.

The subject matter of the contract in the present case is a patent which can have no existence outside of the country in which it was granted. Its nature, and to a great extent its value, depends upon English law. Under the decisions of the English courts, it is so far property that it may constitute a valuable consideration, and may be a subject of a valid contract, even if void for want of novelty. We are of opinion, therefore, that the evidence offered would not have warranted a verdict that the note was without consideration.

The contract contains this clause: "It is understood that said English patent, No. 1,956, is in full force and effect, otherwise said Howard is to be relieved from the payment of said one thousand dollars in cash under this agreement." The plaintiff contends that the first part of this clause means no more than that all the formal requirements of the law in relation to granting patents had been complied with. The defendant contends that the words "full force and effect" relate, not merely to the form of the patent, but to its substance and validity.

We must look carefully at the situation of the parties when the contract was made, to see if we can ascertain their meaning. The plaintiff had just purchased of Jarriant his patent for France and for England, with such rights as could be conveyed to the use of the invention in other parts of the world, and had paid him therefor three hundred and ninety-two dollars. The entire expense incurred by the plaintiff in obtaining these rights was about one thousand dollars. The last clause of the contract indicates that the defendant was the plaintiff's business and financial manager, and was presumably familiar with this part of its business. The plaintiff retained the invention for use in the United States, and arranged to apply for a patent here, which the bill of exceptions shows that it afterwards obtained. It agreed with the defendant to convey him the patent for England for one hundred shares of the stock of the plaintiff corporation, which were then delivered, and for one thousand dollars cash, to be paid according to the terms of the note, and for an agreement by the defendant to transfer to it two patents, for

which the defendant had already applied in the United States, and which he was to pay the expense of obtaining, and for an agreement to make no claim for services as business manager of the plaintiff up to May 1, 1886.

It can hardly be supposed that either of the parties was in doubt as to there being an English patent in proper form, upon which the required fees had been paid to the government; for the purchase had just been made through an agent sent from America to transact the business, and the last fees due upon the patent had been paid about two years before. But they may well have been doubtful as to the "force and effect" of the patent in securing the exclusive rights for which the defendant wanted it. The plaintiff, in his argument, seems to disregard the ordinary meaning of the words in question. The existence of the patent, as a document formally correct, is assumed throughout all the contracts. The provision as to its "force and effect" relates to something more. Upon this question of interpretation, the fact that the parties were Americans, contracting here in reference to property in a foreign land, is proper for consideration. They may be presumed to have known that an American patent, void for want of novelty, would not even be a sufficient consideration for a promise. This stipulation seems intended to require a patent which should be of "effect," in a sense that an American patent must be to obtain recognition in our courts. Moreover, it is to be observed that this provision relieves the defendant only from the payment of the money. It leaves the plaintiff to retain the one hundred shares of stock, and the two American patents, and the defendant's services as manager. If the parties had been providing for a mistake as to the existence of the patent as a document, or for a case where a patent had become void for non-payment of fees, they naturally would have contracted for a restoration to the defendant of the entire consideration.

The provision that the defendant should pay an additional sum if the patent secured "the exclusive use of bichromate of soda in all galvanic cells wherein soda can be used," should not be overlooked. We have not the patent before us, and have no means of knowing its contents except as they are referred to in the several contracts, and so we can only draw inferences doubtfully. But it seems probable that the parties, not knowing

whether the patent was in force and effect in reference to the public use of the invention named in it, and of other similar inventions, intended to stipulate that, if it should prove to be void for want of novelty or for other like cause, the defendant should lose all that he had given for it in stock, patents, and services, but should not pay the one thousand dollars in cash; and that if, on the other hand, it should not only secure the use of bichromate of soda in the particular way described in it, but should also cover the use of it in galvanic cells in every possible way, he should pay an additional sum. The evidence in reference to the invalidity of the patent should, therefore, have been submitted to the jury.

The contract of August 5, 1886, called the Howard Release, and the acts of the parties on that day and subsequently, were equivalent to a performance by the plaintiff of the contract of April 23, 1886. The delivery to Kidder, Peabody, and Company was assented to by the defendant, and no fraud was practised upon him in connection with it; but his execution of the release puts him in no worse position than if the English patent had been assigned to him in the manner contemplated by the first agreement. If that had been done, he would still have been entitled to be relieved from paying the note, if it appeared that the patent was invalid.

The exception in regard to the evidence of a decision in Canada was waived at the argument. We discover no other error in the rulings at the trial. The bill of exceptions does not show that evidence was introduced which would have warranted a finding that the defendant was induced to execute the original agreement by fraud. We do not understand that any question was raised in regard to the cost of obtaining the English patent, except whether the reasonably necessary expenses of transacting the business, beyond the payments to the inventor, to the patent solicitors, and to the consul for fees, should be included. By the ruling of the court, that question was properly answered in the affirmative.

*Exceptions sustained.*